# In the United States District Court for Maryland

USDC- BALTIMORE
'24 MAY 23 AM11:50

**Terance A Tracy (Pro Se)** *
**Petitioner** *
*
**v** * **Case Number**______________________
*
**Kakia Hakim, Probation Agent for State** *
**of Maryland for Anne Arundel County** *
**Respondent** *
**& Attorney General for Maryland** *

## Attachment "A"

## Petition for Writ of Habeas Corpus

## I. Jurisdiction

Jurisdiction is proper pursuant to 28 USC § 2254. Petitioner is currently in custody pursuant to his probationary status as ordered by The Circuit Court of Maryland for Calvert County.

## II. Venue

Venue is proper pursuant to 18 USC § 1391. Petitioner is a resident and currently resides in The State of Maryland. All actions occurred in The State of Maryland.

## III. Procedural History

1. This action was brought first in the District Court for Md in Calvert County (Case Number (D041CR23000109) where Petitioner was charged with Trespass under Md 6-409(b) and Failure to Obey a Lawful Order under Md 10-201(c)(3).



HD
Rcv'd by: D. Lewis

Petitioner prayed a jury trial and The State responded by dropping the Md 10-201 charge, clearly to deny him a jury trial. The State also reduced the penalty for the Trespass to 90 days. Petitioner was appointed a Public Defender and went on to be represented by Caitlin Lomazzo of The Calvert County Pubic Defender's Office. Petitioner was adjudicated guilty by the Hon. Michelle R. Saunders and was sentenced to 20 days incarceration and 3 years unsupervised probation.

2. Petitioner timely appealed the District Court decision to the Circuit Court de novo (Case Number C04CR23000050), praying a jury trial.

3. A trial was held in the Circuit Court and the Petitioner, represented by the same Public Defender, was found guilty of Trespass under Md 6-409(b) by a jury.

4. On 11/27/2023, Petitioner, acting Pro Se, petitioned the Circuit Court for Error Coram Nobis and Special Hearing and as part of the relief prayed dismissal of The Public Defender and new trial under Md 4-331. The State answered on 12/04/2023 and the Petition was Denied on 12/05/2023.

5. On 12/12/2023 Petitioner acting Pro Se entered a Notice of Appeal, intending to challenge the denial of his Petition for Error Coram Nobis and new trial. The State responded to the Petition on 12/13/2023 and the Circuit Court Judge *denied* Petitioner's Notice of Appeal on 12/14/2023.

6. A sentencing hearing was scheduled for December 15 2023 at 9:00 AM to be heard by Circuit Court Judge Chandlee.

7. At the Sentencing Hearing, Petitioner was sentenced to 6 months incarceration in the County Jail with all but 90 days suspended and credit for 6 days served as well as 5 years of supervised probation and a payments totaling $4,015 (includes a $750.00 fine, $165.00 for Court Costs, a $100 drug testing fee and $50.00/month fees for supervisory probation for 5 Years).

8. After the Sentencing Hearing, on 12/17/2023, the Public Defender filed a Notice of Appeal to The Appellate Court of Maryland in the Circuit Court(Case Number ACM-REG-2023-2023). The Appellant Court rejected that Appeal on 12/20/2023, noting that it was improperly filed in that Court due to the Circuit Court trial originating on appeal from the Calvert County District Court. The Appellate Court forwarded the Notice of Appeal to The Maryland Supreme Court(Case Number SCM-PET-305-2023).

9. On the same day, 12/15/2023, the Public Defender entered a Motion to Reconsider Sentence to be held in abeyance until such time as the Petitioner Motions for a Hearing on the matter. This Motion was granted on 12/20/2023. Of note, at

12/15/2023 sentencing Hearing, Judge Chandlee advised Petitioner that if he were to make a 10 minute apology video on his Social Media platforms to Calvert County employees that the Judge would consider exchanging his 5 Year Supervised Probation term to an Unsupervised Probation scheme.

10. On 01/08/2024, the Public Defender Motioned the Circuit Court to Correct an Illegal Sentence which was denied by the Circuit Court on 1/10/2024.

11. On the same day the Circuit Court denied the Motion to Correct, the Public Defender entered a Motion to Withdraw Appearance which was granted by the Circuit Court at a Motions Hearing held on 02/05/2024, 2 days prior to Plaintiff's release from incarceration.

12. Petitioner served 54 + 6 days credit from his District Court Bond Hearing and was released on February 7th 2024.

13. On 03/26/2024 The Supreme Court of Maryland denied the Public Defender's Petition for Writ of Certiorori forwarded from the Maryland Court of Special Appeals. The Public Defender had failed to file the required brief to accompany the Petition.

14. Petitioner (Pro Se) timely filed an Informal Writ of Certiorori *with* the required brief in The Supreme Court of Maryland on 04/01/2024.

15. Petitioner's Pro Se Petition to The Maryland Supreme Court was denied certiorori as "not in the public interest" on 04/19/2024.

16. Petitioner is currently in the custody of Kakia Hakeem Supervising Agent/Monitor for Anne Arundel County, Maryland under terms of Probation ordered by Circuit Court for Maryland Judge Chandlee.

## IV. Issues at Bar

1. Ineffective Assistance of Counsel- 6th Amendment Claim
2. Denial of Petition for Writ of Error Coram Nobus- 14th Amendment Due Process and State Statute Claim
3. Denial of New Trial- 14th Amendment Due Process
4. Circuit Court's Denial of Notice of Appeal- 14th Amendment Due Process
5. Sentencing as "Excessive Bail"- 8th Amendment via 14th Amendment Excessive Bail

6. Government Compelled Speech- 1st and 5th Amendment Claim
7. Sentencing as "Cruel and Unusual" 1st and 8th Amendment Claim

## V. Claim 1 Ineffective Assistance of Counsel

The basis for the prosecution's case has been that the Petitioner had no legitimate business at the Health Department that day and that he was warned of a trespass and returned to violate that warning.

1. Petitioner's appointed counsel, from The Calvert County Public Defender's Office, Caitlin Lomazzo, has been Petitioner's Counsel since the State's Attorney charged the Petitioner in the District Court for Calvert County. The State alleged a Trespass on public property at The Calvert County Health Department under Md Criminal Statute CR 6-409(b).

2. Throughout the Circuit trial, Petitioner maintained that he had permission to be there that day, and to video there which was granted by the Deputy Director for The Calvert County Health Department there, Champ Thomascutty, months prior and has the permission granting on video.

3. And, that the reason he returned moments after leaving and prior to his arrest was to get further information from the deputies in the lobby there about the Health Director for Calvert County Laurence Polsky, relative to an alleged assault that the Director earlier made against the Petitioner so that he could go to the County Comissioner to file a complaint for the alleged assault as he was advised by law enforcement, also captured on video by the Petitioner.

4. Furthermore, the reason the Petitioner was there on the day the alleged trespass was issued was because he wanted to redress his government due to the fact that the Health Department had a weeks prior contacted You Tube and had a video that the defendant had previously produced there taken down over unspecified "privacy" issues. This video contained the permission to film there by The Deputy Director. Petitioner was there to give written warning to them about it.

5. Petitioner consistently relayed that exculpatory information to his counsel throughout both the District and Circuit trials which spanned about 11 months.

6. The Circuit Court set a trial for 06/27/2023 which was postponed, due to a Detective Sarah Jernigan who was nearing retirement and had vacation time to claim. The Detective's role at the trial was to validate and support the authenticity of video that was on the Petitioner's phone and GoPro video recording device which was confiscated on the day of his arrest. Detective Jernigan was the person who downloaded the videos as a software expert for the State.

7. The video on the GoPro device contained likely exculpatory footage of the Health Department Director's alleged assault, that being the reason the Petitioner returned to the public lobby to ask Law Enforcement there for his information in order to file a complaint with the State's Attorney for charges.

8. On 11/13/2023 at 1:23 PM, the day before the Circuit Court trial, Petitioner text messaged counsel to remind her of the importance of the Detective's presence at the trial the following day. Counsel replied via text at 4:30 PM that The Detective would not be attending the Trial. The Petitioner first advised his counsel of the importance of The Detectives testimony at the Circuit trial on 06/15/2023 when his counsel advised for removal of The Detective from the witness list and the Petitioner protested that action. The Detective did not show for trial the following day.

9. While the State's Attorney used the GoPro footage on the days of the Circuit trial. Petitioner's counsel barely used any of the footage, including the alleged assault by The Health Department Director. No video from the phones live stream was admitted into evidence.

10. A Conference Status Hearing was scheduled on the same day as the beginning of the Circuit trial on 11/14 at 8:15 AM. The Petitioner attended the trial with his grandmother who funded his appeal bond so she had an interest in his attendance. Petitioner's grandmother is elderly and requires the use of handicap parking and has a MVA placard for that purpose.

11. Upon arrival at the Courthouse parking lot, the only nearby available spaces to The Court were 1 hour parking only so the Petitioner had to park farther from the building then expected. The nearest untimed handicap parking was about 100' farther away from the 1 hour parking area.

12. Petitioner texted his counsel and informed her of the parking troubles and that he would be no more than 2 minutes late. He arrived in the Courtroom lobby at 8:17 and text messaged counsel as to his arrival. However, before

he was allowed to proceed to the Courtroom, the Court Bailiff stopped him and advised he was unable to go to the courtroom without his counsel and that Petitioner would have to wait in the lobby. The Petitioner assumed his counsel was walking over to the courthouse from her office, just across the street from the courthouse at the district court building.

13. Counsel never advised that she was, in fact, already inside of the courtroom and text messaged the Petitioner a "thumbs up" emoji and "Rm 4 Circuit" at 8:24. The Petitioner quickly replied to counsel "waiting in the waiting room". Counsel then replied, "NO! Room 4".

14. Petitioner arrived in the courtroom at 8:27 to find the Judge leaving the bench. Upon seeing the Petitioner's presence there he returned to the bench and advised the Petitioner, "you're lucky, I was about to enter a bench warrant for Failure to Appear". Petitioner offered to explain his tardiness to the Judge but the Judge stopped him. Petitioner instructed his counsel to provide the proper explanation for the tardiness. Counsel simply replied, "He knows".

15. Counsel could have at any time intervened and got her client to the courtroom or advise the Judge that he was present and on his way to the courtroom but was being held up by court house staff.

16. At the Circuit trial, counsel slips the Petitioner a piece of paper stating, "you need to sign this". Petitioner quickly looked over the paper and found it to be an agreement with the State that Detective Jernigan, the State software expert that downloaded the video footage, would not be required to testify at the Circuit trial. Petitioner protested as he had long advocated for the detective to be there to testify to the efficacy of the likely exculpatory video he required for his defense anticipating possible objections by the State as to it's authenticity or possible editing. The State replied, "This has been agreed to for a long time". Petitioner was never advised of this "agreement" until the day of trial, and was only informed of the possibility the day before. He had advocated for the Detective's testimony since the District trial ended.

17. The Judge then asked why the Petitioner was against signing the agreement. The Petitioner explained that the video was exculpatory and should be supported by the Detective's testimony as authentic.

18. The video was included in discovery. However the Petitioner was never advised that it was and had only been made aware of the availability of

Body Worn Camera video originating from Law Enforcement from the day of his arrest until that day.

19. The Judge's rectification for this issue was to allow allow the Petitioner 15 minutes to watch the unseen video. The unseen video portion was approximately 40 minutes long.

20. Counsel's laptop wouldn't play the video footage. However the correct software to play the video was included with the video file from the State. Counsel advised the Petitioner that there was "nothing I can do about it" and the Petitioner was unable to view the video to form a defense using it. Petitioner offered to pull the files up through another source but was informed there was no other device available to view the video on.

21. Counsel then advised the Petitioner that she would "bring it up in closing" so the Petitioner signed the agreement only thinking that it would be remedied at trial on cross examination of witnesses and in closing arguments.

22. Counsel never mentioned, cross examined witnesses about it, nor brought the video up at closing. This was likely very prejudicial to the defense.

23. The Calvert County Health Department's Deputy Director Thomascutty, the only witness for the defense, and under objection by the State. Deputy Director Thomascutty testified at trial, and while the jury was not present, that the Petitioner was "wreaking havoc" at The Health Department on the day of his arrest.

24. The Judge advised that he would allow all testimony from Deputy Director Thomascutty.

25. Deputy Director Thomascutty testified in front of the jury that they would need to "build walls" against such intrusions and claimed that the Petitioner was there at The Health Department three times prior to trial. Petitioner affirms he only went there twice. Once when he got permission from Deputy Director Thomascutty(on video) and then on the day of his arrest. No other evidence was presented that the Petitioner was there more than those two days.

26. Petitioner's counsel never corrected those errors through cross examination. We also know that the video of him granting petitioner permission was never used to refute the Deputy Director's testimony as stated in Paragraph 22 in this Petition.

27. The video from the day, month's prior to Petitioner's arrest, contained valuable exculpatory information such as Deputy Director Thomascutty on that video having a pleasant conversation with the Petitioner during which the Director states things such as; Petitioner was "not disruptive", that the Petitioner "never entered any restricted areas" and that his staff "should be trained(regarding videoing in public spaces within the Health Department building)" and that "the staff should know but don't always do their best". Ending the conversation with an invitation to "come back any time" and a handshake. Deputy Director then held the door open for petitioner to re enter the building to continue filming and conducting his business.

28. This is also the video that was posted to You Tube that the Health Department made a privacy claim against and had You Tube take it down for them which is why the Petitioner returned to the Health Department, months later, to redress them about having the video taken down in writing.

29. Even though You Tube removed the video, the Petitioner still had the original and unedited copy of the video and sent that video to his counsel previously for the District Court trial in march of 2023.

30. Petitioner would note too that at the District Court trial, this video was shown but as the Deputy Director Thomascutty was not summoned there and only the video file was shown but *without audio* since the Deputy Director was not present to testify to acknowledge or refute it's contents.

31. Due to the unavailability of the audio file at District Court, the Petitioner in March 2023 after his appeal bond was accepted had a conversation with counsel to "be sure" the Deputy Director was at the Circuit trial to testify so that both the video and audio could be presented to the jury in it's entirety,

32. Then again, on May 12th 2023, Petitioner reminded counsel via text message that the Deputy Director needed to be at the Circuit trial to testify about the video.

33. And again on August 24 2023, Petitioner reminded counsel, again via email. This would have been a third reminder since the District trial.

34. On the second day of the Circuit Court trial, Petitioner again asked about the Deputy Director's presence for the trial and counsel advised him that the Deputy Director was "on the list" to testify. After some time seeing his counsel's performance Petitioner asked to directly address the Judge while the jury was not present.

35. Petitioner told the Judge that counsel was struggling with his trial and compared his relationship to counsel to a "brick wall", paraphrasing an earlier comment *by the Judge* about his counsel on the record. The Judge responded that his perspective may be "skewed" compared to a lawyer. The Petitioner responded that he needs to, "be sure he gets the issues on the record for appeal" regarding the earlier objections, cross examination and exclusion of the GoPro video.

36. Petitioner asserts that the objections to testimony and the cross examination by his counsel will be shown by the record to have been ineffective.

37. At the conclusion of Deputy Director's testimony, Petitioner's counsel attempted to end questioning. The Petitioner protested to her that the video file was never addressed during his testimony. Counsel asked the Court for time to find the video file but after a few minutes of looking she realized that she failed to download the video to her laptop and without further attempt to use the video to rebut the Deputy Director's testimony said, "no further questions". Note that Petitioner also had access to a copy of this video through his "google drive" and would only need minutes to produce it but was never given the option as counsel had ended the line of questioning.

38. At lunch break on the first day of the Circuit trial, the Petitioner reminded counsel that the Body Worn Cam(BWC) from witness Officer Bradley contained likely exculpatory video. In the BWC video, Counsel advised the Petitioner that Officer Bradley can be seen talking to the Health Department Director Polsky about the Petitoner's allegations of his assault on the him. In the video, Director Polsky states that he did push the Petitioner's camera. Officer Bradley responds, "You can't do that, Lawrence, he can take you to court"!

39. Counsel stated she had no way of producing or playing the BWC footage of Director Polsky admitting fault but Petitioner advised counsel at the break that the BWC was admitted to evidence but counsel never mentioned it again.

40. Then, on the 2nd day of trial again during the lunch break the Petitioner asked counsel why she was not doing what should be in his best interests at trial. Counsel responded that the Petitioner could "write to a post trial committee after trial" without elaborating what that meant or identifying any "committee" that he would make a complaint to.

41. When petitioner asked counsel why she was no advocating for his innocence on multiple occasions over the past 2 days counsel responded with, "how can you hold me to one dumb mistake I made off of 2 hours of sleep"? Petitioner made no response.

## Claim 1 Judicial Standard

1. In the Petitioner's Petition for Error Coram Nobis, the facts demonstrate that Defendant counsel's omissions of evidence and other factors with no remedy put forth by counsel to correct those omissions and other factors fell below an "objectionable standard of reasonableness" as 1 prong of the landmark Federal Supreme Court's case of Strickland v Washington.

2. The second prong of ineffective counsel found in Strickland is "a reasonable probability that, but for counsel's errors," the outcome of the criminal proceeding may have been different. Excluded exculpatory video footage that counters the State's assertions that:

   (a) the Defendant had no legal reason to be there that day and;

   (b) the defendant had no legitimate reason to return, and thereby "knowingly trespassed"

3. These assertions would likely be nullified by the absent GoPro video where the Deputy Director invited the Petitioner to return "anytime". Along with evidence that the Petitioner was there that day to *redress grievances* about the complaint by The Health Department that resulted in the removal of his video from You Tube. A reasonable jury could find the State's assertions regarding (a) above to be repugnant to the evidence that might have been viewed but for counsel's neglect.

4. And, the BWC footage where Director Polski admitted he assaulted the Defendant backed up by Officer Bradley's response that the Petitioner could "take him to court" over his actions that day. This video evidence excluded by Petitioner's counsel may have been found repugnant by a reasonable jury to the State's assertions in (b) above.

5. The facts presented here when weighted by repeated failures, after months of reminders by the Petitioner, and omissions by Petitioner's Counsel prejudiced the defense so as to deprive the Petitioner of a fair trial.

6. Re: Strickland, "Even when the specified attorney error results in the omission of certain evidence, the newly discovered evidence standard is not an apt source from which to draw a prejudice standard for ineffectiveness claims. The high standard for newly discovered evidence claims presupposes that all the essential elements of a presumptively accurate and fair proceeding were present in the proceeding whose result is challenged.". And, "an ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and *the appropriate standard of prejudice should be somewhat lower.* A jury trial where omitted evidence likely to prejudice the prosecution's assertions to convict a defendant is a clear indication of ineffective counsel and a failure of due process.

7. The Circuit Court Judge's Order denying Petitioner's Error Coram Nobis is a Final Judgment pursuant to Md 15-1207(d).

## VI. Claim 2 Petition for Error Coram Nobus

1. Pursuant to Md Rules of Special Procedure 15-1207, "**(a) Statement.** The judge *shall* prepare and file or dictate into the record a statement setting forth separately each ground on which the petition is based, the federal and state rights involved, the court's ruling with respect to each ground, and the reasons for the ruling.**(b) Order of Court.** The statement shall include or be accompanied by an order granting or denying relief. If the order is in favor of the petitioner, the court may provide for rearraignment, retrial, custody, bail, discharge, correction of sentence, or other matters that may be necessary and proper."

2. In the case supra, the Circuit Court Judge made no record, neither verbally during proceedings nor by Order "a statement setting forth" grounds for denial of The Petition nor any of the State or Federal Rights involved in The Circuit Court's denial of The Petition as required by the Md Rule.

3. This omission prejudiced the Plaintiff's ability to articulate a brief for his Notice of Appeal subsequently filed following The Circuit Court's denial of The Petition for Error Coram Nobus. This action by The Circuit Court denies Plaintiff's 14th Amendment right to a fair due process.

## VII. Claim 3 Denial of New Trial

1. Pursuant to Maryland Criminal Causes 4-331, "**(a) Within Ten Days of Verdict.** On motion of the defendant filed within ten days after a verdict, the court, in the interest of justice, may order a new trial." *and*, "**(b) Revisory Power.** The court has revisory power and control over the judgment to set aside an unjust or improper verdict and grant a new trial: **(2)** in the circuit courts, on motion filed within 90 days after its imposition of sentence. Thereafter, the court has revisory power and control over the judgment in case of fraud, mistake, or irregularity.

2. Also contained in the header and prayer for relief within the Petition for Error Coram Nobus is a Request for New Trial pursuant to Md Criminal Cause 4-331. No Order or consideration of this request was given by The Circuit Court Judge relative to that Motion. Because this Motion was not addressed verbally during any proceeding nor by any Order of The Circuit Court, the Petitioner was prejudiced his Due Process rights via The 14th Amendment. Petitioner had no basis following the omission of an order to lawfully present this issue on Appeal as an appeal in Md "shall be on final judgment of The Court", pursuant to Maryland Code, Courts and Courts and Judicial Proceedings 12-301 which states, "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a *final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction*, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended".

## VIII. Claim 4 Denial of Notice of Appeal

1. Petitioner timely filed a Notice of Appeal in the Circuit Court on 12/12/2023.
2. The State on the same day, in an unusual action, filed a Response to Petitioners Notice of Appeal, ultimately asking The Circuit Court to DENY the Notice of Appeal.
3. Circuit Court Judge Chandlee DENIED the Notice of Appeal on 12/12/2023.
4. The intent of the Petitioner was to note an Appeal based on the Denial of

the Error Coram Nobis as well as the Circuit Court's denial of a new trial pursuant to Md 4-331, The Error Coram Nobus being a final judgment, and the Motion for new trial being contained within the Error Coram Nobis Petition, the Notice of Appeal was ripe for consideration only by The Maryland Supreme Court to which it was directed.

5. Petitioner asserts that a Notice of Appeal to a Maryland Appeals Court is not to be Granted or Denied by the Court from which the Appeal is taken. Nor is an answer to a Notice of Appeal required by The State. Petitioner attempted to timely file a notice of appeal as a right ascribed in Md Rule 8-302(b)(1) but that right was impinged by the Order Denying the Notice of Appeal entered by the Circuit Court Judge. Md Rule(s) 8-601, 8-602, 8-603 only offer lawful options to grant or deny a timely filed Notice of Appeal by; The Court of Special Appeals, The Maryland Supreme Court or on Motion to Withdraw the Appeal by the Petitioner. Petitioner was denied his ability to pursue the Appeal as the denial stopped the Clerk of Court from producing and forwarding the records to The Maryland Supreme Court as required by Md. Rule(s) to continue the Appeal. Petitioner finds no Maryland case law in similarity where a Circuit Court Judge denies a Notice of Appeal to a Appeals Court.

6. Petitioner attempted to timely file a notice of appeal as a right described in Md Rule 8-302(b)(1) but that right was denied by the Order Denying the Notice of Appeal entered by the Circuit Court Judge.

## IX. Claim 5 Excessive Fees and Fines

1. At the 12/15/2023 Sentencing Hearing in The Circuit Court, Petitioner was, in part, sentenced to 5 years of probation which carries a $50.00 per month fee for supervision. This fee should have been waived by the Circuit Court under the statutory guidelines for sentencing due to the Petitioner's indigence. Petitioner was entitled by statute to a public defender for both his District and Circuit Court Trials as well as his Maryland Supreme Court Appeal via Writ of Certiorori. Petitioner has a rare cancer which affects his ability to maintain red blood cells produced by bone marrow and receives a monthly benefit from The Federal Government (SSDI) due to this disability.

2. Maryland Code of Criminal Procedure §6-226 provide in part, "**(b)** *Unless the supervisee is exempt under subsection (d) of this section*, the court shall impose a monthly fee of $50 on a supervisee".

3. Maryland Code of Criminal Procedure §6-226(d)(3) states, "the supervisee has a handicap limiting employment, as determined by a physical or psychological examination accepted or ordered by the court".

4. Neither the Petitioner's health nor financial status has changed to date. The Court has, numerous times, accepted his claim of indigency by Order and his health issues have been raised on the record in all previous Court proceedings.

5. Petitioner is under a constant threat of probation revocation proceedings only due to his indigence as a result of the excessive fees imposed by The Circuit Court, a violation of The 8th Amendment protections as "Nor Excessive Fines Imposed" and "Cruel and Unusual Punishments" and by Maryland Statute.

6. At the 12/15/2023 Sentencing Hearing in The Circuit Court, a $750.00 fine was also imposed on the Petitioner. Petitioner's indigent status, as incorporated in this section, is an "excessive fine" as outlined above. The fine is collected on a monthly payment plan by The Petitioner and a failure to pay also endangers Petitioner's liberty, further exposing him to a probation revocation proceeding. The fine imposed by The Circuit Court is "excessive" and "Cruel and Unusual" due to the constant mental strain imposed as well.

7. At the 12/15/2023 Sentencing Hearing in The Circuit Court, a $165.00 fee for "court costs" was imposed on The Petitioner. Court costs are typically waived for an indigent defendant in accordance with appointment of a Public Defender. The fees are collected by The Defendant and failure to pay the court cost fees endangers Petitioner's Liberty, further exposing him to a probation revocation proceeding. The court cost fee is excessive and "cruel and unusual" as well.

8. Petitioner, as of 05/03/2024 is $765.00 behind in payments to The State and is receiving monthly threats of having case "referred for a summons or a warrant!" if not paid in full withing 27 days of the notice.

# X. Claim 6 Government Compelled Speech

1. At the 12/15/2023 Sentencing Hearing, Circuit Court Judge Chandlee advised on the record to The Petitioner, his Public Defender and The State that if he produced and published a 10 minute video apologizing, not to an individual victim but to The Calvert County Health Department "for his actions there", that he would consider converting his remaining 5 year Supervised Probation term into an Unsupervised Probation term.

2. Petitioner's Public Defender responded on 12/17/2023 with a Motion for Reconsideration of a Sentence to preserve Petitioner's statutory right pursuant to Maryland Rule 4-345 to ask for a Sentence Reconsideration Hearing to provide for The Petitioner to produce and publish his compelled "apology" to his YouTube Channel. The Public Defender further requested the Motion be "held in abeyance and not denied outright" because Petitioner was incarcerated at the time.

3. The State, for reasons unknown, replied in opposition to this motion, even though the details and reasoning had already been stated on the record at the 12/15/2023 Sentencing Hearing.

4. Circuit Court Judge Chandlee GRANTED this motion to be held in abeyance on 12/20/2023.

5. Petitioner, to date, has not produced such apology video which he believes to be an infringement of his 1st and 5th Amendment protections via the 14th Amendment, his Right(s) Guaranteed to not be compelled in his speech nor self incrimination as he maintains his innocence of the charges brought by The State.

6. Speech compelled by order of a court may sometimes remain within the confines of First Amendment protections, given the reduced voracity of the Constitutional rights of a convicted person's punitive sentencing. However, in the case supra, The Circuit Court Judge effectively requires The Petitioner to produce an apology video via a commercially recognized media outlet such as a monetized YouTube Channel. The Circuit Court Judge is well aware that The Petitioner's YouTube channel is monetized because The State, without evidence, incorrectly calculated The Petitioner's income from the video he posted about the incident. Claiming on the record that The Petitioner would have made thousands of dollars as a result of posting the video because he has enough subscribers to "fill the nationals baseball stadium". The Circuit Court used this incorrect analysis to determine his $750.00 fine. The State's analysis is simply untrue.

7. The Compelled speech here is not singly stated as a punitive measure by the Court but rather as a contingency to a "possibly reduced" sentence later which financially discounts the costs of the actual punitive sentence given by The Court. That sentence being the costly 5 years of supervised probation fees.

8. Essentially, The Court says here that The State will continue to collect fees that The Petitioner cannot afford until such time as The Petitioner produces a 10 minute long commercial video apologizing to a State Agency for actions of which The Petitioner maintains his innocence and is still in appeal months later in this Court. And, whenever The Petitioner can no longer afford those fees, the consequence is likely further incarceration. The Court, again, being well aware of Petitioners indigent status.

9. Even with limited Constitutional protections of a convicted person, such a scheme is repugnant to remaining Constitutional Rights of a convicted person to not self incriminate or be compelled to apologize to a State Agency. Adding to that self incrimination, the leveraging of a punitive action by a State Court to collect fees of an indigent person in lieu of a public confession of guilt via an apology and otherwise likely be again incarcerated is repugnant to The Constitutional Rights of The Petitioner and those that follow.

10. Commercial Speech implications may also be applied here. Petitioner's YouTube Channel, being monetized and owned by a State recognized LLC, is a commercial entity rather then a personally owned "hobby" channel. Petitioner's YouTube channel enjoys all the protections given to a commercial media source. For a State Court to compel a commercial entity's speech, Constitutional implications and case law apply.

11. The Supreme Court has held in Zauderer v. Office of Dist. Counsel 471 U.S. (1985) that the Government may only compel commercial speech "to disclose certain information reasonably related to The State's interest in preventing deception to consumers". A Court mandated apology to a State Government Agency does nothing to further that interest. In fact, an apology to a State Government Agency furthers no State interest at all, even if it is punitive.

# XI. Claim 7 "Cruel and Unusual Punishment"

1. Specific to Calvert County, Petitioner has found 34 other trespass cases dating back to 1/2022, 29 cases included Trespass on private property and 5 additional cases having occurred on Government owned properties in the County.

2. Of the cases of Trespass on private properties, more than 75% had aggravating factors such as theft or property damages under $1000.00, failure to obey lawful orders, assaults and public intoxication. {See Exhibit 1}

3. Of the 5 Public Property Trespass cases, One each at; a County Public Library, a County Museum (X2), The County Circuit Courthouse, The Calvert County High School(after hours) and a posted Public Works Property 2 of those cases weren't charged and of the 3 remaining cases the most severe sentence was given for a trespass at the County Public Library with additional charges of Public intoxication, Disorderly Conduct, Failure to Obey a Lawful Order and Malicious Destruction of Property >$1000.00 in the same incident. This defendant's charges were reduced to 1 charge of Public Intoxication and he was sentenced to 60 days incarceration with all but 2 days suspended and 1 year of unsupervised probation. All other cases researched, including this one, had even less punitive outcomes then the case supra.

4. While Md 6-409(b) allows for maximum incarceration up to 6 months and up to a $1000.00 fine, The Circuit Court had no cause to effect the maximum incarceration term along with supervised probation to likely effect the remaining 90 days of incarceration after The Petitioner already served the unsuspended 90 days of incarceration. The Court then having imposed the Supervised Probation, with its fees and collection of fines and court costs to an indigent defendant, likely forcing the 90 days suspended term to be imposed due to nonpayment such that The Petitioner should serve the maximum penalty allowed by Maryland Statute.

5. Petitioner Motioned the Circuit Court to Correct his sentence on 01/08/2024, The State responded against the Motion on 01/09/2024 and The Circuit Court Judge DENIED the Motion on 01/10/2024.

6. Comparing The Petitioner's punishment for a simple trespass on public property to other trespass cases over the last 4 years within the same County's Judiciary demonstrates that The Court, although acting within the Md Statute's penalties, was excessive given his alleged actions on the day of his arrest. Petitioner was at

The County Health Department that day, exercising his 1st Amendment protected rights to peacefully redress his government over their actions directed at him and to quietly video his encounter there to create transparency as a Free Press should. Petitioner remained only in the Publicly accessible areas. Petitioner only returned to the front lobby to gain further information from Deputies there. The exercise of Constitutionally protected rights should never lead to Cruel and Unusual Punishment. The prior Trespass cases found demonstrate that The Circuit Court's punitive levy is "unusual", at least. And for this he was incarcerated and is being financially depleted of his ability maintain his life and liberty.

WHEREFORE, Petitioner prays the Court to GRANT a STAY of any further collection of fines, fees, or costs in the State matter pursuant to 28 USC § 2251(a)(1).

WHEREFORE, Petitioner prays that the Court grant him all relief to which he may be entitled in this action.

**Respectfully** submitted by Petitioner Terance A Tracy, I hereby swear and affirm that all information contained herein is true and fair to the best of my knowledge under penalty of perjury.

Terance A. Tracy — 5/23/24

Terance A. Tracy    Date

## Exhibit 1

## Affidavit

Case Number(S) Defendant Charges(S) Result

1. D041CR200000334 Matthew Dennis Tr-Prvt 90 Days/ 88 Days Susp/3 Yr Unsup
2. D041CR20000041 Leigh Anne Eaver Tr/Prvt STET
3. D041CR2000060 Kylie Letcher Tr/Prvt STET
4. D041CR20000792 Dylan Epman TR/Prvt STET
5. D041CR20000909 Alonza Wallace Tr/Prvt 90Days/ +3 Charges
6. D041CR2000975 Matthew Dennis Tr Prvt STET
7. D041CR20001131 J Doe STET/87 Days(time served)
8. D041CR20001307 John Noone Tr/Prvt 60 Days/Supend all but4/1 Yr Unsu Prob
9. D041CR20001273 Joseph Patronen Tr/Prvt 90 Days/(0 days Susp/2Yr Unsup Prob
10. D041CR200001453 Brandon W Jones Tr/Prvt 2 Days(time served)
11. D041CR20001492 Sean Luke Braziel Tr/ Prvt 2 Days(time served)
12. D041CR20001541 Justin A Holt Tr/Prvt 5 Days(time served)
13. D041CR2000405 Ann Nunes Tr/Prvt STET(w/4th Deg Burg)
14. *D041CR2001306 Joseph Patronen **Tr/Publ** + Publ Intox. + Disord Conduct + Fail to Obey Lwf Ord + MDOP(less$1K) 60 Days(all but 2 Days Susp(time served)/ 1 Yr unsup Prob
15. D041CR21001356 Quinten R Holland Tr/Prvt + 90 days/90 days susp/18 mo unsup prob
16. *D041CR22000049/C04CR2200013/C04CR22000127Dawn Marie Keen **Tr/Pub**(Courthouse) + Dis Conduct STET
17. D041CR22000586Michael P Wilson Tr/Prvt (3rd Offense) STET
18. D041CR22000658 Nicole Parker Tr/Prvt STET
19. D041CR22000940 Marci Pitt Tr/Prvt STET
20. D041CR22001000 Joseph Greenhawk Tr/Prvt STET
21. D041CR220010970 Dennis Erich Tr/Prvt 10days(time served) No Prob
22. D041CR2201195 Dexter Holland Tr/Prvt STET
23. D041CR22001099 Robert Rice Tr Prvt 90 days/All byt 20 susp/ 1 Yr unsup

Prob

24. D041CR22001187 Marvin Thomas Tr/Prvt 30 days/ 30 days susp/ 1 yr unsup prob
25. D0-41CR221188 J Doe Tr/Prvt 2 Days(time served)
26. D041CR220001258 George W Jacks Tr/Prvt 45 Days/No Prob
27. D041CR22001302 Marvin Thomas Tr/Prvt 30 Days/30 Days susp/1Yr Unsu Prob
28. D041CR22001353 Robert Rice 30 Days/ 30 Days susp/1 yr unsup prob
29. D041CR22001574 William T Bourne Tr/Prvt 20 days/18 days susp/1yr unsup prob
30. *D041CR23000477 Keon Hall **Tr/Publ**(Calvert High School) + Poss CDS STET
31. *Uncharged -post arrest Joseph L Breyer **Tr/Publ** + Disorderly + Fail to Obey
32. *Uncharged -post arrest Thomas Jay Worch **Tr/Publ** + Disorderly + Fail to Obey
33. D041CR23000757 Robert Allen Rice Tr/Prvt 30 Days/ No Prob
34. D041CR24000278 Robert Allen Rice Tr/Prvt 39 Days(time served)

Source: Maryland Judiciary Case Search

*************************************************************************

Calvert County, Md. Official Press Releases:

On August 25, 2021, Deputy Shoemaker responded to the Prince Frederick Library located at 850 Costley Way in Prince Frederick, MD to assist a sick person. Upon arrival, the complainant advised a male identified as **Joseph Frank Partonen**, 58 of no fixed address, was highly intoxicated inside the library. A strong odor of an alcoholic beverage was emitting from his person in addition to having slurred speech. Partonen was advised he was no longer allowed in the library. Partonen became angry and upset and refused to leave the property. After several warnings to vacate the premise, Partonen began yelling, causing a disturbance. Partonen refused all commands and was placed under arrest. Partonen kicked the sliding doors on his way out, knocking the doors off the tracks. The total value of damaged property is $1000.00. Partonen was transported to the Calvert County Detention Center where he was charged with Trespassing, Intoxicated Public Disturbance, Disorderly Conduct, Failure to Obey a Reasonable/Lawful Order of Law Enforcement Officer and Malicious Destruction of Property $1000+.
60 days all susp but 2 days + 1 yr unsup probation

On January 14, 2022, Sgt. Naecker responded to the Calvert County Circuit Courthouse for the report of a disorderly female. Per court deputies, **Dawn Marie Keen**, 42 of Port Republic, MD was advised masks were required while inside the

courthouse per an administrative order issued Dec. 27, 2021 by Chief Judge Joseph M. Getty of the MD Court of Appeals in light of Omicron Variant of the COVID-19 Emergency. The provision states that ALL individuals entering the Circuit Courthouse of Calvert County shall wear face masks indoors regardless of vaccination status or other related health measures. Keen refused to wear a mask and was asked to leave the building, but refused to do so. Keen was advised multiple times of the policy, but refused to leave. Keen was placed under arrest and transported to the Calvert County Detention Center where she was charged with Disorderly Conduct and Trespassing of a Government House. 60 susp all but 1 day(time served) 18mo unsuperv probation

On May 26, 2023, F/Sgt. Phelps had trespassed two individuals, **Joseph Lawrence Bryer**, 20 of California, and **Thomas Jay Worch**, 18 of Drayden, from the Calvert Marine Museum, located at 14200 S. Solomons Island Road in Solomons, for being disorderly. On May 26, at approximately 8 p.m. Bryer and Worch returned to the previously mentioned location after being trespassed and continued to be disorderly. Both Bryer and Worch were intoxicated, yelling, and attempted to fight individuals inside the concert. Bryer and Worch were arrested by Dep. Zinn and transported to the Calvert County Detention Center where they were charged with Trespassing: Private Property, Disorderly Conduct, and Failure to Obey a Reasonable Lawful Order. ALL CHARGES DROPPED POST ARREST

On June 16, 2023, at 2:42 p.m., Deputy Dawson responded to the Calvert County Highway Maintenance storage lot located at 335 Stafford Road Prince Frederick, for the report of a subject wearing jail clothes climbing on the equipment. A sheriff's deputy pumping gas noticed the female walk past his vehicle through the gates with posted signs "No Trespassing, Staff Only". The female, **Shelley Marie Dodson**, 51 of Lusby, was observed climbing in the salt dome and then on the equipment stored outside the dome. Investigation revealed Dodson had been released from the Calvert County Detention Center located at 325 Stafford Road a short time prior. Dodson was arrested for Trespassing-Posted Property. 90 days/ 90 Days Suspended

Source:
https://www.calvertcountymd.gov/3604/News-Press-Releases

I hereby swear and affirm that all information contained herein is true and fair to the best of my knowledge under penalty of perjury.

Affiant ______________________ 5-23-24
Terance A. Tracy Date